IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL DUNHAM MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 00-6134-CV-SJ-4-P |
| ) | |
| WINFREY DICKERSON, et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' TRIAL BRIEF

Defendants Winfrey Dickerson, Dora Schriro, Elijah Nagbe, Steve Long, Michael Kemna, Larry Crawford, Lawrence Morganfield, and David ManSingh, through counsel, hereby submit their Trial Brief. A copy of this Trial Brief is also being made available to plaintiff in compliance this Court's order of September 23, 2005 (Doc. No. 253).

### I. Plaintiff and other inmate-witnesses: Convictions, conduct violations, transfer, and membership in white supremecist organizations.

Plaintiff and several of his witnesses are currently incarceration in the Missouri Department of Corrections (the MDOC). Defendants intend to ask plaintiff and the inmate-witnesses about their felony convictions, including the name of the conviction, date of the conviction, and sentence. Defendants believe that this information is admissible pursuant to Federal Rule of Evidence 609.

Defendants further intend to ask plaintiff about some of the information pertaining to his convictions. For example, plaintiff was convicted of Murder, Second Degree. Plaintiff was asked about this conviction in his deposition and admitted that the victim, a man, was of another race. Plaintiff was released on parole for this conviction, but later served time in the federal penitentiary.

1

Defendants intend to ask plaintiff, as he was asked in his deposition, about his federal charges, including, among other things, possession of machine guns. Defendants also intend to ask plaintiff about an article he authored ("Some Call it Justice") in which he admits he was accused of planning to blow up a synagogue and planning to kill a Jew.[1]

Defendants also intend to ask plaintiff and inmate-witness David Tate about certain conduct violations received during their periods of incarceration within the MDOC. Plaintiff received a conduct violation for conspiracy to incite a riot. Plaintiff was asked in his deposition about receipt of this conduct violation and did not deny it. David Tate received a conduct violation for an escape attempt. Tate was working along with a group of inmates in planning and carrying out the escape.

Here, plaintiff seeks segregated group worship services for white inmates. Information about his conduct violation is relevant because, according to the violation, plaintiff's recruitment of inmates into the conspiracy was by, or due to, race. The jury should be able to consider the fact that plaintiff received such a conduct violation in the past as they consider whether plaintiff is sincere in his religious beliefs, and whether his request for segregated worship services is truly a tenet of religious beliefs, or for some other, nefarious, purpose. The information is also relevant to defendants' contention that compelling interests, including safety and security concerns, prohibit accommodating plaintiff's request for segregated group services.

David Tate has also twice been transferred to prisons within the Department due to racial conflicts or racial unrest. Defendants intend to present this information at trial. David Tate, like plaintiff, claims to be an adherent of the Christian Separatist Church. David Tate's transfers are relevant because, as with plaintiff's conduct violation, the jury should be able to consider whether

---

[1] Plaintiff's article is included as part of defendant's Exhibit 13.

the Christian Separatist Church is indeed a religious denomination, and if so, whether plaintiff and other separatist needs to have segregated services for purely religious reasons, or for other, nefarious, purposes. David Tate's transfer information is also relevant to defendants' contention that compelling interest prohibit them from offering segregated group services.

David Tate is also a member of an organization known as "Bruders Schweigen" (Silent Brothers), as well as "The Order." These organizations are regarded as the "military" arm of the Aryan movement. Tate has authored writings in which he admits membership in these organizations. Prior to his incarceration, Tate also lived at the Aryan Nations headquarters in Hayden Lake, Idaho. Defendants intends to elicit such information at trial because, once again, the jury should be able to hear and consider who it is that will be attending the segregated services should plaintiff and others of his group receive the accommodation plaintiff seeks within the MDOC, plaintiff's true purpose in requesting segregated services, and the MDOC's compelling interests in denying such services.

Both plaintiff and David Tate, and possibly other inmate-witnesses, have submitted "declarations" to the MDOC staff that they will not mix with inmates of other races. This includes refusal to share cells with other inmates. These "declarations" are signed by plaintiff and/or Tate. Defendants believe these "declarations" are relevant, given the issues in this lawsuit, and intend to present such evidence at trial.

## II. Exhibits plaintiff may not retain in his possession.

Pursuant to this Court's order of September 23, 2005, defendants faxed their witness list, exhibit list, and this Trial Brief to Crossroads Correctional Center for delivery to plaintiff prior to trial. Defendants also asked Crossroads staff to deliver to plaintiff several exhibits that plaintiff may not have copies of, including, for example, letters between MDOC officials. However, plaintiff was

3

not given copies of numerous exhibits included on defendants' exhibit list. Those exhibits are marked on the list with an asterisk. Exhibits with an asterisk were not provided to plaintiff because plaintiff may not retain copies of the documents.

For example, as stated above, defendants intend to ask plaintiff and other inmate-witnesses about their convictions. If this Court orders that defendants are not allowed to do so, then defendants will make an offer of proof, including certified copies of each inmates' Adult Institutions Face Sheet, which includes a listing of convictions. The Adult Institutions Face Sheets were not provided to plaintiff because they contain convictions, social security numbers, whether an inmate is a sex offender, personal contact information for the inmate, and so on. Defendants also did not provide plaintiff a copy of certain publications because counsel are uncertain if the publications are allowed inside prisons.

Once again, all of these questionable exhibits are marked on defendants' exhibit list with an asterisk. Should these exhibits be used at trial, defendants ask that this Court order that plaintiff cannot retain in his possession - both at the end of each day of trial and at the conclusion of trial - a copy of these exhibits.

**III.    No personal involvement or knowledge regarding plaintiff's claims.**

Some of the defendants and witnesses listed by plaintiff have no personal involvement in denying plaintiff Issue #36 of <u>The Way</u>, nor in denying plaintiff segregated group services. For example, plaintiff knows who was involved at Crossroads in censoring his magazine because he has the censorship notification form and included those persons on his witness list (William Wayne and Jean Ann Johnson), although he did not name them as defendants. Plaintiff also knows that Winfrey Dickerson was the Director of religious and spiritual programming at the time that his request for

4

segregated group services was denied in July 2001. It is unclear why plaintiff includes persons such as David ManSingh (current Chaplain at Crossroads who did not become employed by the Department until 2004) and Lawrence Morganfield (who took over as Director of religious and spiritual programming after Dickerson left the position) as defendants.

Defendants bring this issue to this Court's attention for two reasons. First, point out that some of the defendants and other witnesses may have scant knowledge of Murphy's claims, and their ability to provide pertinent information may be hampered. Second, a 42 U.S.C. § 1983 claim (plaintiff's claim regarding Issue #36 of The Way) requires a causal relationship between a defendant's conduct and a plaintiff's constitutional deprivation. *Latimore v. Widseth*, 986 F.2d 292, 295 (8th Cir. 1993). *Respondeat superior* and vicarious liability are insufficient for liability in such suits. *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990).

### IV. Testimony of V.S. Herrell.

Plaintiff presumably intends to call V.S. Herrell as a witness to testify about his religious group and Christian Separatist beliefs, doctrine, and tenets. Plaintiff includes V.S. Herrell on his witness list. Plaintiff never provided an expert designation for Mr. Herrell. Nor did plaintiff provide an expert report as required by the Rules of Civil Procedure. Mr. Herrell's qualifications to provide "expert" testimony on doctrinal, theological and penological matters are therefore unknown. For these reasons, should Mr. Herrell be in attendance at trial, defendants intend to object to his expert testimony.

Respectfully submitted,

JEREMIAH W. (JAY) NIXON
Attorney General

*/s/ Virginia Murray*

VIRGINIA MURRAY
Assistant Attorney General
Missouri Bar No. 48770
P.O. Box 899
Jefferson City, Missouri 65102
Phone No. (573)751-8834
Fax No. (573)751-9456

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was faxed to Crossroads Correctional Center on October 7, 2005, Attn: Mary Burns, to be either hand-delivered or through institutional mail, to the following individual:

Michael Murphy
Reg. No. 36193
Crossroads Correctional Center
1115 East Pence Road
Cameron, Missouri 64429

*/s/ Virginia Murray*
Asst. Attorney General

6