IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| **MICHAEL DUNHAM MURPHY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| vs. | ) | Case No. 00-6134-CV-SJ-GAF |
| | ) | |
| | ) | |
| **MISSOURI DEPARTMENT OF** | ) | |
| **CORRECTIONS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

Presently before the Court is a Motion for a New Trial, filed pursuant to Fed. R. Civ. P. 59(e) by *pro se* Plaintiff, Michael Dunham Murphy ("Plaintiff"). (Doc. #308). Plaintiff argues that he is entitled to a new trial based on several allegedly erroneous jury instructions. Id. Defendants, Missouri Department of Corrections ("MDOC"), et al. (collectively "Defendants") oppose this Motion, arguing that this Court correctly instructed the jury. (Doc. #318). For the reasons set forth more completely below, Plaintiff's Motion is DENIED.

**DISCUSSION**

**I.      Facts**

Plaintiff is an inmate and is currently housed at Crossroads Correctional facility in Cameron, Missouri. Beginning on or about April 20, 2000, Plaintiff began submitting requests for group worship services for the Christian Separatist Church. (Doc. #1). In his request for accommodation, Plaintiff stated

1

that a central belief of the Christian Separatist Church is that, "God Almighty has declared His perfect will for the salvation and preservation of Aryan men in Jesus Anointed...and that He does now command men to come out from among the godless and be a <u>separate people</u> in the Rulership of Jesus Anointed[.]" <u>Id</u>. (emphasis in original). Plaintiff also wrote in his request for accommodation that, "Our belief in 'Separation' in all its forms may not be as popular in this age as in thousands of generations past, but it is strongly held and well established." <u>Id</u>. Plaintiff's request for group services for the Christian Separatist Church was denied. <u>Id</u>. Instead, Plaintiff was granted "solitary practitioner" status, which entitles Plaintiff to practice his religion privately in his cell, to receive literature, to have access to clergy visits, to observe holy days, and to keep a religious text, subject to MDOC guidelines.

Plaintiff filed suit on November 15, 2000, alleging violations of his First Amendment right to free exercise of religion, the Establishment Clause, the Fourteenth Amendment Equal Protection Clause, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 ("RLUIPA"). Plaintiff also alleged that Defendants violated his First Amendment right to free speech when, pursuant to the MDOC's censorship policy, prison officials refused to provide Plaintiff with Issue #36 of "The Way," a Christian Separatist publication that Plaintiff had received in the mail.

On September 27, 2002 this Court granted Defendants' motion for summary judgment on all of Plaintiff's claims. (Doc. #168). Plaintiff appealed, and on June 22, 2004, the Eighth Circuit reversed on two of Plaintiff's claims. <u>Murphy v. Missouri Dept. of Corrections</u>, 372 F.3d 979 (8th Cir. 2004). First, the Eighth Circuit found that genuine issues of material fact existed regarding whether prison officials' refusal to deliver Issue #36 of "The Way" violated Plaintiff's First Amendment right to free speech. <u>Id</u>. at 986. Second, the Eighth Circuit found that, although Defendants did not violate Plaintiff's First Amendment free

2

exercise rights by refusing to grant the accommodation of group worship to the Christian Separatist Church, a genuine issue of material fact existed as to whether prison officials violated Plaintiff's rights under the higher standard of review established by RLUIPA. Id. at 988.

Plaintiff's RLUIPA and First Amendment free speech claims were tried before a jury on October 11, 2005. On October 17, 2005, the jury returned a verdict in favor of all Defendants on Plaintiff's RLUIPA and free speech claims. In his present Motion, Plaintiff argues that he is entitled to a new trial based on several allegedly erroneous jury instructions. (Doc. #308). First, Plaintiff argues that a supervisory liability jury instruction should have been given on Plaintiff's claim that Defendants violated his First Amendment right to free speech. Id. Second, Plaintiff argues that his free speech claim should not have been treated as an action under 42 U.S.C. § 1983 ("§ 1983"), but instead should have been included as part of his RLUIPA claim. Id. Third, Plaintiff argues that the jury instructions given on Plaintiff's RLUIPA claim misstated the elements of a RLUIPA claim and used the wrong standard. Id. Finally, Plaintiff argues that the Court erred in describing Plaintiff's request for religious accommodation as a request for "racially-segregated group services for the Christian Separatist Church."[1] At trial, Plaintiff failed to object to any of the jury instructions given by the Court.

## II. Legal Standards

### A. *New Trial Standard*

Fed. R. Civ. P. 59 governs the granting of a new trial and provides:

---

[1] In Plaintiff's Motion, Plaintiff also seems to argue that the verdict was against the weight of the evidence. (Doc. #308). However, in his reply to Defendants' suggestions in opposition to Plaintiff's Motion, Plaintiff states that he is not arguing that the verdict was against the weight of the evidence. (Doc. #322).

3

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

A motion for a new trial will be granted only where a "miscarriage of justice" occurred in the first trial. Larson v. Farmers Coop. Elevator of Buffalo Ctr., 211 F.3d 1089, 1095 (8th Cir. 2000). A movant is entitled to a new trial where a "substantial error" prejudices the rights of the parties and unfairly influences a jury's verdict. Pullman v. Land O'Lakes, Inc., 262 F.3d 759, 762 (8th Cir. 2001); Alholm v. American Steamship Co., 144 F.3d 1172, 1181 (8th Cir. 1998). "Prejudicial error is error which in all probability produced some effect on the jury's verdict and is harmful to the substantial rights of the party assigning it." Pullman, 262 F.3d at 762.

### B. Appellate Review

Fed. R. Civ. P. 51 states, in relevant part, "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Failing to make a timely objection to instructions results in the waiver of any assignment of error as to those instructions. Daggit v. United Food & Commercial Workers Int'l, Union 304A, 245 F.3d 981, 985 (8th Cir. 2001). Accordingly, Plaintiff's failure to object to any of the jury instructions given by this Court "limits the appellate court to correcting only plain errors as necessary to avoid a miscarriage of justice." *See* Gopher Oil Co., Inc. v. Union Oil Co. of California, 955 F.2d 519, 525 (8th Cir. 1992) (internal citations omitted). When no objection is made to the instructions before the jury retires, the appellate court will reverse only "in the exceptional case where the error has seriously effected the fairness, integrity, or public reputation of the judicial proceedings." Daggit, 245 F.2d at 985 *quoting* Figge Auto Co. v. Taylor, 325 F.2d 899, 907 (8th Cir.

1964).

**III. Analysis**

*A. Plaintiff's Free Speech Claim*

**1. Supervisory Liability**

Plaintiff alleges that this Court erred in failing to give the jury Plaintiff's proposed supervisory liability instruction for Plaintiff's free speech claim, as supposedly set forth in Plaintiff's proposed instruction #2. Plaintiff did not object at trial to the Court's decision not to give a supervisory liability instruction on Plaintiff's free speech claim. Furthermore, Plaintiff's proposed instructions in fact do not set forth a supervisory liability instruction on Plaintiff's free speech claim. Therefore, this Court finds that a miscarriage of justice did not occur and, accordingly, Plaintiff is not entitled to a new trial on this issue.

In U.S. v. Yellow Hawk, 276 F.3d 953, 956 (8th Cir. 2002), the Eighth Circuit found no plain error where the Court did not instruct the jury on a defense that was not addressed by counsel and not objected to at trial. Similarly, the Plaintiff in the instant case did not request a supervisory liability instruction on his free speech claim, and did not object at trial when a supervisory liability instruction was not given. Plaintiff's requested instruction #15 on his free speech claim reads, in relevant part, as follows:

> ESSENTIAL ELEMENTS OF PLAINTIFF'S FREE SPEECH CLAIM
> Do you find from a preponderance of the evidence:
> 1. That Defendant _____ intentionally committed acts that violated Plaintiff Michael Dunham Murphy's federal constitutional rights by seizing and withholding of Plaintiff's paper Issue #36 of The Way?

(Doc. #289). Plaintiff proposed a direct liability instruction for his free speech claim, not a supervisory liability instruction. Additionally, Plaintiff's requested supervisory liability instruction, as set forth in Plaintiff's proposed instruction #2, relates to Plaintiff's RLUIPA claim, not to his free speech claim. It

5

reads, in relevant part, "Plaintiff Michael Dunham Murphy makes a claim, not only against defendant chaplains involved **in this denial of religious practice**, but also against the Missouri Department of Corrections administrative, custody and central office staff." (Doc. #289) (emphasis added). Plaintiff cannot now claim that a miscarriage of justice occurred because this Court did not give an instruction that Plaintiff never requested and never objected to at trial. Accordingly, Plaintiff is not entitled to a new trial on this issue.

### 2. Plaintiff's Free Speech Claim Under § 1983

Plaintiff argues that his free speech claim should not have been treated as an action under § 1983, but instead should have been included as part of his RLUIPA claim. Plaintiff did not object at trial to this Court's treatment of his free speech claim as arising under § 1983. The Eighth Circuit also treated Plaintiff's § 1983 free speech claim and his RLUIPA claim as two distinct claims when it reversed this Court's grant of summary judgment on those claims. Murphy, 372 F.3d at 985-88. Indeed, inmates' free speech claims under § 1983 and claims asserted under RLUIPA have different legal standards. Id. A strict scrutiny analysis is used in evaluating RLUIPA claims. Id. at 988. However, "Regulations involving the review of incoming mail in prisons need only be reasonably related to legitimate penological interests." Id. at 985-86 *citing* Thornburgh v. Abbot, 490 U.S. 401, 413-14 (1989).

This Court correctly treated Plaintiff's free speech and RLUIPA claims as separate claims with different legal standards, and instructed the jury accordingly. The Court's refusal to apply an incorrect legal standard to Plaintiff's free speech claim did not result in prejudice to the Plaintiff's rights or a miscarriage of justice. Therefore, Plaintiff is not entitled to a new trial on this issue.

*B. Plaintiff's RLUIPA claim*

6

### 1. Elements of a RLUIPA Claim

Plaintiff argues that the jury instructions given on Plaintiff's RLUIPA claim misstated the elements of a RLUIPA claim and used the wrong standard. Specifically, Plaintiff argues that the third element of his RLUIPA claim, as set forth in Instruction #14, erroneously required Plaintiff to prove by the greater weight of the evidence that, "racially-segregated group services are a sincerely held tenet or belief central or fundamental to Christian Separatist Church doctrine." (Doc. 301). Instruction #14 reads in its entirety:

> Your verdict must be for the plaintiff on his religious exercise claim if all of the following elements have been proved by the greater weight of the evidence:
> *First*, Plaintiff requested racially-segregated group services for the Christian Separatist Church; and
> *Second*, Defendants denied racially-segregated group services for the Christian Separatist Church; and
> *Third*, Racially-segregated group services are a sincerely held tenet or belief central or fundamental to Christian Separatist Church doctrine; and
> *Fourth*, Plaintiff's right to freely exercise his sincerely held religious beliefs is substantially burdened by the denial of racially-segregated group services for the Christian Separatist Church.
> A "substantial burden" must be more than just an inconvenience. A "substantial burden" is instead government conduct that pressures the plaintiff to commit an act forbidden by his religion or prevents him from engaging in conduct mandated by his faith.
> However, your verdict must be for the defendants if any of the above elements has not been proved by the greater weight of the evidence or if the defendants are entitled to a verdict under Instruction No. 15[2].

(Doc. #301). Plaintiff argues that, in demonstrating that his right to freely exercise his religious beliefs was substantially burdened, he should not have been required to show that his beliefs were either sincerely held or fundamental to Christian Separatist Church doctrine. Plaintiff apparently contends that he should have been allowed to prevail on his RLUIPA claim even if the jury found his beliefs to be insincere and/or unimportant to Christian Separatist Church doctrine. Plaintiff did not object to Instruction #14's third

---

[2]Instruction #15 sets forth RLUIPA's strict scrutiny test.

element at trial.

"RLUIPA requires that [Plaintiff] show, as a threshold matter that there is a substantial burden on his ability to exercise his religion." Murphy, 372 F.3d at 988. To constitute a "substantial burden," the Eighth Circuit requires a showing that the government policy or actions significantly inhibits religious expression that "manifests some central tenet of a [person's] individual [religious] beliefs," "meaningfully curtail[s] a [person's] ability to express adherence to his faith," or "den[ies] a [person] reasonable opportunities to engage in those activities that are fundamental to a [person's] religion." Id. The Court instructed the jury in accordance with the Eighth's Circuit's requirements as set forth in Murphy. These instructions were not prejudicial to Plaintiff and did not result in a miscarriage of justice[3]. Accordingly, Plaintiff is not entitled to a new trial on this issue.

Plaintiff also argues that the Court used the incorrect standard to instruct the jury on his RLUIPA claim. Under RLUIPA, if a plaintiff successfully shows that there is a substantial burden on his religion, the government must demonstrate that the imposition of the substantial burden (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that governmental interest. 42 U.S.C. § 2000cc-1(a); Murphy, 372 F.3d at 986-87. However, although prison officials are required to meet a higher burden under this standard than under the rational basis test applicable to other constitutional claims, prison officials must nevertheless be accorded a significant degree of deference in evaluating whether they met that burden. Murphy, 372 F.3d at 987.

Instruction #15 reads as follows:

---

[3]The Court also notes that the Plaintiff's sincerity and the centrality of racial separatism to Christian Separatist Church doctrine were not disputed by the Defendants at the trial.

8

> Your verdict must be for defendants on plaintiff's religious exercise claim set forth in Instruction No. 14 if it has been proved by the greater weight of the evidence that:
> 1. Defendants' denial of racially-segregated group services for the Christian Separatist Church is in furtherance of a compelling governmental interest; and
> 2. Defendants' denial of racially-segregated group services for the Christian Separatist Church is the least restrictive means of furthering that compelling governmental interest.
>
> "Compelling governmental interests" may include good order, security and discipline, consistent with considerations of cost and limited resources.
>
> The "least restrictive means" is the equivalent of "no greater than necessary" to further a compelling governmental interest.
>
> Prison officials are accorded a significant degree of deference when evaluating whether the least restrictive means was used to further a compelling governmental interest.

(Doc. #301).

The Court instructed the jury in accordance with the standard set forth in RLUIPA and in Murphy. Accordingly, Plaintiff is not entitled to a new trial on this issue.

### 2. Plaintiff's Request for Accommodation

Finally, Plaintiff argues that the Court erred in characterizing Plaintiff's request for religious accommodation as a request for "racially-segregated group services for the Christian Separatist Church" as opposed to, apparently, a request for "Christian Separatist Church services.[4]" The issue is one of semantics rather than substance. Plaintiff is not entitled to a new trial on this issue because his rights were not prejudiced by the instruction, nor did a miscarriage of justice occur as a result of the instruction.

"The form and language of jury instructions are committed to the sound discretion of the district court so long as the jury is correctly instructed on the substantive issues in the case.[5]" Jones v. Swanson,

---

[4] See § III (B) (1) of this Order for the complete text of Instruction #14.

[5] RLUIPA does not require jury instructions to contain a description of the specific type of religious accommodation at issue. 42 U.S.C. 2000cc-1. However, the Court included a description of the type of religious accommodation requested by the Plaintiff in order to clarify and narrow the

9

341 F.3d 723, 734 (8th Cir. 2003).   Plaintiff did not object at trial to the characterization of his request for accommodation as a request for "racially-segregated group services for the Christian Separatist Church."  On the contrary, the trial centered around the Christian Separatist Church's belief in absolute racial segregation and exclusively white membership.

Plaintiff's expert witness and the "present overseer of the Christian Separatist Church" (Trial Tr. 33: 12-14), Pastor V.S. Herrell ("Herrell"), testified at length regarding the Christian Separatist Church's mandate of absolute racial separation.  (Trial Tr. 48: 22-50:6; 54: 23-55:1; 71: 8-73:6; 76: 8-17).  Herrell stated unequivocally that non-whites, including African-Americans, Jews, and "mongrels[6]" cannot be members of the Christian Separatist Church or attend services. (Trial Tr. 71: 8-73:6; 77:22-78-8).  Herrell explained that prospective members must fill out an application and answer questions such as, "What are your feelings about Blacks and mongrels?" "What are your feelings about Jews?" and "Have you ever had sex with a mongrel, Black, Jew or homosexual?"  (Trial Tr. 77:8-78:8).  Herrell stated that the Christian Separatist Church has "strict standards" and the local deacon is in charge of deciding whether a certain person is allowed to attend services.  (Trial Tr. 40:10-18.).  The Plaintiff himself also testified about the Christian Separatist Church's mandate of absolute racial separatism.  (Trial Tr. 40:10-14; 48: 22-24; 58:10-59:3).  Despite this testimony, the Plaintiff now argues that the Court's characterization of his request

---

substantive issue for the jury.

[6]According to Christian Separatist Church doctrine, a "mongrel" is a mixed-race individual. (Trial Tr. 77:22-23).  Christian Separatists believe that the Sixth Commandment is translated as "You will not mongrelize."  (Trial Tr. 87: 19-22).

for accommodation as "racially-segregated" caused him to lose at trial[7].

During deliberations, the jury wrote a note to the Court, which read, "Should we rule in favor of the defendant if (item 1) (first element) is 'not true?' This does not seem logical." (Doc. #305). Based on the evidence presented at trial, the Court can only speculate as to how one or more jurors may have been confused as to the racially-segregated nature of the Christian Separatist Church. However, because the Defendants did not dispute that Plaintiff had made such a request, the Court instructed the jury to **find in favor of the Plaintiff** on the first element, stating, "As submitted to you plaintiff's request in this case is for racially-segregated group services for the Christian Separatist Church." (Doc. #305). Therefore, to find in favor of the Defendants, as the jury did, the jury must have either found that the Plaintiff had failed to prove another element of his case or that the Defendants had met their burden of showing that their denial of racially-segregated group services for the Christian Separatist Church satisfied the strict scrutiny test set forth under RLUIPA.

The Court finds that "racially-segregated" accurately describes the Christian Separatist Church and the Plaintiff's argument is one of form rather than substance. Further, Plaintiff's rights could not have been substantially prejudiced when the Court instructed the jury to treat the first element of Plaintiff's RLUIPA claim as having been successfully proved by the Plaintiff. Accordingly, Plaintiff is not entitled to a new trial on this issue.

## **CONCLUSION**

---

[7]Plaintiff suggests that the jury was led astray by the Court's use of the phrase "racially-segregated" in that the term "racially-segregated" somehow implies that Plaintiff made a formal request for state enforcement of racial segregation at Christian Separatist Church services. However, jury instruction #14 neither states nor implies that Plaintiff made a formal request for state enforcement of racial segregation.

11

Plaintiff is not entitled to a new trial on the issue of supervisory liability on his free speech claim because Plaintiff did not object to the Court's decision not to give such an instruction at trial and because Plaintiff's did not propose that the Court give a supervisory liability instruction on his free speech claim. Further, because this Court properly treated Plaintiff's free speech claim as an action under § 1983, Plaintiff is not entitled to re-try his free speech claim under RLUIPA.

Plaintiff is not entitled to a new trial on his RLUIPA claim because the Court instructed the jury in accordance with the requirements as set forth by the Eighth Circuit's opinion in Murphy and used the correct legal standard for a RLUIPA claim. Finally, Plaintiff's rights were not substantially prejudiced by the Court's characterization of Plaintiff's request for accommodation as a request for "racially-segregated group services for the Christian Separatist Church," in light of the Christian Separatist Church's mandate of absolute racial separatism and in light of the Court's instruction that the jury find in favor of the Plaintiff on the first element of his RLUIPA claim. Accordingly, Plaintiff's Motion for a New Trial is DENIED.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED:   January 27, 2006